UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| JAMMIE T. SMITH<br>aka JAMMIE SIMMONS,<br><br>        Plaintiff,<br><br>    v.<br><br>T. JACKSON, Multnomah County<br>Sheriff's Deputy, individually and in<br>his official capacity,<br><br>        Defendant. | Case No. 3:22-cv-01698-MK<br><br>OPINION AND ORDER |

KASUBHAI, Magistrate Judge.

      Plaintiff, previously an adult in custody (AIC) at the Multnomah County Detention Center (MCDC), brought this civil rights action and alleged that Defendant used excessive force and exposed Plaintiff to a substantial risk of harm by leaving him in a cell contaminated with OC spray. Defendant now moves for summary judgment, and the parties have consented to resolution of this action by magistrate judge. Upon review of the record and arguments, Plaintiff

- 1 -    OPINION AND ORDER

fails to raise a genuine issue of material fact to defeat summary judgment, and Defendant's motion is GRANTED.

## BACKGROUND

At all relevant times, Plaintiff was a pretrial detainee housed at MCDC. The following facts are taken primarily from Plaintiff's Amended Complaint and his responses to Defendant's Motion for Summary Judgment.[1]

On October 5, 2020, MCDC deputies deployed OC spray while forcibly removing another AIC from Cell 3 in Dorm 7. Rodriguez Decl. Ex. 2. Cell 3 remained unoccupied for several days.

On October 9, 2020, at approximately 10:15 a.m., Plaintiff was moved to Cell 3 in Dorm 7. Am. Compl. ¶ 8. Immediately upon entering the cell, Plaintiff claims that he smelled OC spray, began coughing, and walked out of the cell. *Id.* Plaintiff maintains that other AICs informed him and Defendant that OC spray had been deployed in Cell 3 and the cell had not been cleaned. Plaintiff then asked Defendant for cleaning supplies. *Id.* ¶ 9. Plaintiff allegedly told Defendant that he suffered from preexisting respiratory issues, including asthma. Defendant denied Plaintiff's request for cleaning supplies and ordered Plaintiff to remain in Cell 3 and close the door. *Id.* ¶ 10.

Fifteen minutes later, Plaintiff pressed the emergency call button and Defendant responded. Plaintiff claims that his eyes were watery and his breathing was labored. Plaintiff requested medical assistance and Defendant allegedly responded that Plaintiff would be "all

---

[1] Defendant moves to strike Plaintiff's second response, construed as a Sur-Reply, arguing that the Sur-Reply is untimely and fails to comply with the Court's Local Rules. I agree that Plaintiff's Sur-Reply is untimely and acknowledge Defendant's additional objections. However, given Plaintiff's pro se status, I am not inclined to strike the Sur-Reply and would have allowed Defendant the opportunity to respond if the Sur-Reply arguably raised a genuine issue of material fact. For the reasons explained below, it does not.

right." Am. Compl. ¶ 11. Approximately five to ten minutes later, Defendant conducted a security check of the dorm, and Plaintiff again requested medical assistance for his breathing difficulties. Defendant responded that he did not have time to address Plaintiff's complaints because he had to "give another deputy a break." *Id.* ¶ 12. Defendant then left the unit to cover another deputy's workstation.

Plaintiff pressed the emergency call button again and Defendant responded after approximately fifteen to twenty minutes. *Id.* ¶ 13. Plaintiff requested medical assistance, and approximately ten to fifteen minutes later, a deputy checked on Plaintiff at Defendant's request. *Id.* The deputy requested the assistance of a nurse, who arrived in approximately ten to fifteen minutes. *Id.* ¶¶ 13-14.

The nurse examined Plaintiff and reported that he appeared "slightly tremulous," with "slightly" shallow breathing and "no audible wheezing or coughing." Rodriguez Decl. Ex. 8 at 1. Plaintiff told the nurse that he had taken puffs of his inhaler and was feeling "a little better." *Id.* The nurse prescribed nasal spray and recommend that Plaintiff be moved to another cell. *Id.* Ex. 8 at 2. Although the cells in Dorm 7 were full, Plaintiff was moved from Cell 3 after another AIC offered to "trade" cells. *Id.* Ex. 5, Ex. 7 at 2. Plaintiff claims that he requested a cold shower to decontaminate from any contact he may have had with residual OC spray and Defendant denied the request.[2]

After October 9, 2020, Plaintiff did not report additional complaints or request further medical treatment for respiratory distress or breathing problems. *Id.* Ex. 13 at 2-4.

---

[2] Defendant's recollection of events on October 9, 2020 differs slightly from Plaintiff's. Defendant's subsequent report indicates that Plaintiff complained about smelling OC spray about forty minutes after his transfer to Cell 3, and Defendant instructed Plaintiff to "cell in" at that moment because Defendant did not have time to address Cell 3's cleanliness. Rodriguez Decl. Exs. 5, 9. Defendant further reported that dorm workers told him that they had cleaned Cell 3 "vigorously" after the incident on October 5. *Id.* Ex. 5.

- 3 -    OPINION AND ORDER

DISCUSSION

Plaintiff alleges that Defendant exhibited deliberate indifference to his health and safety and used excessive force by ordering him to remain in a cell contaminated with residual OC spray for over an hour. Defendant moves for summary judgment on grounds that he used no force against Plaintiff and the evidence does not establish deliberate indifference.

To prevail on his motion for summary judgment, Defendant must show that there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Defendant must present evidence of record, together with affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If Defendant meets this burden, the burden shifts to Plaintiff to demonstrate the existence of a genuine issue of fact for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see* Fed. R. Civ. P. 56(c)(1).

The Court must construe the evidence and all reasonable inferences in favor of Plaintiff, as the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). The Court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec*, 475 U.S. at 587 (citation and quotation marks omitted).

A. Deliberate Indifference

Under the Fourteenth Amendment's Due Process Clause, pretrial "detainees have a right against jail conditions or restrictions that 'amount to punishment.'" *See Pierce v. Cty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008) (citation omitted). An objective standard applies to

constitutional claims of deliberate indifference brought under the Fourteenth Amendment. *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). Under this standard, a pretrial detainee must show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125; *see also Sandoval v. Cty. of San Diego*, 985 F.3d 657, 669 (9th Cir.), *cert. denied*, 142 S. Ct. 711 (2021). To satisfy the third element, the plaintiff must show that the defendant's actions were "objectively unreasonable," which requires a showing of "more than negligence but less than subjective intent – something akin to reckless disregard." *Gordon*, 888 F.3d at 1125 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)).

The evidence of record does not support a claim for deliberate indifference. When construed in Plaintiff's favor, the record shows that Defendant ordered Plaintiff to remain in a cell contaminated with residual OC spray for a little over one hour. Plaintiff presents no evidence suggesting that Defendant knew or should have known that Cell 3 contained traces of residual OC spray, or that that the deployment of OC spray three to four days earlier would pose a substantial risk of serious harm. Plaintiff did not present serious symptoms and was not wheezing or coughing, and no evidence suggests that other AICs complained about the smell or presence of OC spray prior to Plaintiff's transfer to Cell 3. Rodriguez Decl. Ex. 8 at 1. Further, Plaintiff concedes that Defendant asked another deputy to check on Plaintiff after he repeated his request for medical help, and Plaintiff was examined by a nurse and moved to another cell. Finally, Plaintiff admitted that he could have showered during his subsequent "walk time" if he

needed to decontaminate. *Id.* Ex. 14 at 2. While Plaintiff insists that Defendant was negligent in failing to obtain immediate medical assistance, negligence cannot sustain a claim for deliberate indifference. *See* Pl.'s Opp'n to Mot. Summ. J. (ECF NO. 45); *Castro*, 833 F.3d at 1071 (stating that the "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment"). Under these circumstances, Defendant's conduct did not rise to the level of reckless disregard within the meaning of the Fourteenth Amendment.

Even if Plaintiff arguably raised a genuine issue of fact regarding deliberate indifference, Defendant is entitled to qualified immunity.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). Determining the application of qualified immunity "involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-exiting precedent" and "be 'settled law.'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Ultimately, "the 'dispositive inquiry' in the clearly-established analysis is 'whether it would be clear to a reasonable officer that his *conduct* was unlawful in the situation he confronted,' based on the law at the time." *Sandoval*, 985 F.3d at 672 (quoting *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002)).

The Ninth Circuit has held that the failure to provide an AIC with decontamination procedures after exposure to OC spray can establish a claim for deliberate indifference. *Clement v. Gomez*, 298 F.3d 898 (9th Cir. 2002). In *Clement*, the plaintiffs were indirectly exposed to OC spray when it was deployed nearby and drifted into their cells. *Id.* at 901-02. The plaintiffs alleged that prison officials failed to provide medical treatment and decontamination showers for at least four hours, despite the ill effects suffered by the plaintiffs. *Id.* at 902. Under those circumstances, the Ninth Circuit found that the plaintiffs arguably could "show that the defendants were subjectively aware of the risk of serious injury when they denied showers and medical attention for the inmates for the 4 hour period." *Id.* at 905. The Ninth Circuit noted that the plaintiffs alleged that they were "coughing, gagging, or choking" and the officers themselves were coughing and stepped "outside for fresh air." *Id.*; *see also Walsh v. Gower*, 2020 WL 1149912, at *5 (D. Or. Mar. 9, 2020) (holding that qualified immunity did not apply when "a reasonable officer in Defendants' position would understand that it was unlawful to ignore Plaintiff's complaints of pain and deny Plaintiff the opportunity to decontaminate after secondary exposure to OC spray").

The facts of this case are easily distinguishable from *Clement*. Here, Plaintiff was not exposed, directly or indirectly, to the deployment of OC spray; rather, he was placed in a cell with residual OC spray left over from its deployment three or four days earlier. Plaintiff received medical attention within an hour or so after reporting respiratory difficulties, and he was moved to another cell at the nurse's recommendation. Given these facts, no reasonable officer in Defendant's position would have believed that his actions violated Plaintiff's rights under the Fourteenth Amendment.

Accordingly, Plaintiff fails to raise a genuine issue of material fact to defeat summary judgment on his claim for deliberate indifference.

B. Excessive Force

Plaintiff also alleges that Defendant's order to remain in Cell 3 constituted the use of excessive force. To prevail on an excessive force claim brought under the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). Importantly, "an excessive force claim requires the actual use of 'force.'" *Burns v. Decarr*, 2010 WL 744395, at *3 (S.D. Cal. Mar. 2, 2010) (granting summary judgment on an excessive force claim where the plaintiff admitted that the defendant "never put his hands on" him).

Here, Defendant used no force whatsoever against Plaintiff; Defendant did not grab, shove, or strike Plaintiff and only ordered him to remain in Cell 3. These facts do not support a claim for excessive force, and summary judgment is granted on this claim.

CONCLUSION

Defendant's Motion for Summary Judgment (ECF No. 26) is GRANTED, and Defendant's Motion to Strike (ECF No. 49) is DENIED. This action is DISMISSED. Any appeal of this Order or Judgment dismissing this case would be frivolous or not taken in good faith, and Plaintiff's IFP status is REVOKED.

IT IS SO ORDERED.

DATED this 14th day of December 2023.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge